UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

IVO SKORIC, )
)
Plaintiff, )
)
v. ) Case No. 5:17-cv-183
)
KILLINGTON SKI RESORT, )
)
Defendant. )

**OPINION AND ORDER**
**(Doc. 1)**

Plaintiff Ivo Skoric, proceeding pro se, brings this action under 42 U.S.C. § 1983 against his former employer Defendant Killington Ski Resort (Killington), alleging that Killington violated his constitutional rights when it issued a notice of trespass against him on January 25, 2017. (Doc. 1-2 at 4.) He seeks rescission and withdrawal of the notice against trespass as well as money damages. (*Id.*) Mr. Skoric has filed a motion to proceed *in forma pauperis* under 28 U.S.C. § 1915 (*see* Doc. 1), and has submitted an affidavit (Doc. 1-1) that makes the showing required under § 1915(a). Accordingly, the request to proceed *in forma pauperis* (Doc. 1) is GRANTED. However, for the reasons set forth below, the complaint is DISMISSED.

Under the *in forma pauperis* statute, the court conducts an initial screening of the complaint. *See* 28 U.S.C. § 1915(e)(2). The court is required to read a pro se plaintiff's complaint liberally and construe it to raise the strongest arguments it suggests. *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam). However, the court must dismiss the complaint if it determines that the action fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. Killington Did Not Act Under Color of State Law

The court concludes that Mr. Skoric has failed to state a § 1983 claim. Under 42 U.S.C. § 1983, a claimant may bring suit against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

In this case, the first element is lacking. Here, nothing in Mr. Skoric's allegations suggests that Killington was acting under color of state law when it issued the notice against trespass. Killington is a private company; there is no sufficient allegation that Killington is a state actor.

The court rejects Mr. Skoric's contention that Killington should be considered a state actor because it operates on leased public land. (*See* Doc. 1-2 at 4.) As this court has observed in a separate case, a portion of the land upon which Killington operates is indeed leased from the State of Vermont. *See Post v. Killington, Ltd.*, No. 5:07-CV-252, 2010 WL 3323659, at *1 (D. Vt. May 17, 2010); *see also Sherburne Corp. v. Town of Sherburne*, 124 Vt. 481, 207 A.2d 125 (1965). That fact alone, however, does not bring this case within the ambit of the "symbiotic relationship" test in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961).

In *Burton*, the owner of a private restaurant that leased space in a state-owned building practiced racial discrimination. The Supreme Court held that the owner's discriminatory action qualified as state action because "the state owned the building, paid the building's maintenance, owned an adjacent parking lot and therefore had a direct financial interest in the restaurant's success, and dedicated the building for public purposes, thereby conferring tax exempt status on the building." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1082 (2d Cir. 1990) (citing *Burton*, 365 U.S. at 723–24).

But *Burton* "does not stand for the broad proposition . . . that leasing property from a government agency transforms a private actor into a state actor for purposes of section 1983 liability" in all cases. *Lattibeaudiere v. AMR Servs. Corp.*, No. CV 95 5269 (RJD), 1996 WL 518076, at *3 (E.D.N.Y. Sept. 3, 1996). Rather, the outcome of the analysis depends on the facts of each individual case. *See Burton*, 365 U.S. at 723 (multiple "factors" were relevant to whether state action was present); *see also Hadges*, 918 F.2d at 1081 (the test in *Burton* does not lend itself to "formulaic applications"; the court must instead "sift through and weigh the facts to determine whether the alleged ties between the State and the private actor are sufficiently strong to attribute the private actor's conduct to the state"); *Int'l Soc'y for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir. 1984) (per curiam) (each inquiry is "fact-intensive").

Here, the complaint alleges no facts regarding the details of the relationship between Killington and the State of Vermont. But the relevant details do appear in state public records, including the 1960 lease itself,[1] and Appendix A4 of the State Auditor's January 20, 2015 report

---

[1] Available at http://auditor.vermont.gov/sites/auditor/files/files/reports/ski-leases/Killington-Mountain-Resort-Lease.pdf.

3

entitled *State Land Leases Boost Ski Industry, but Are Dated and Inconsistent*.[2] The court may take judicial notice of these documents. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may take judicial notice of "relevant matters of public record"); *Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (courts considering matters of public record on a rule 12(b)(6) motion may consider "published reports" and "records of administrative agencies").

The arrangement in this case does not meet *Burton*'s symbiotic-relationship test. The State of Vermont does have an ownership interest in some of the land and structures at Killington, but the court concludes that that is not by itself enough. Neither is the payment of rent. Killington makes lease payments to the State of Vermont under the terms of the 100-year lease. The rental payment depends on Killington's gross receipts, and in fiscal year 2014 it was about $1.2 million. The court concludes that the lessor-lessee relationship is not sufficient by itself to constitute the symbiotic relationship that was present in *Burton*. It is true that the State gains greater tax revenues if Killington's gross receipts increase, but that link is insufficient to forge a symbiotic relationship. *Hadges*, 918 F.2d at 1082.

The *Burton* Court also considered the tax advantages of the arrangement in that case: "Should any improvements effected in the leasehold by Eagle [the restaurant] become part of the realty, there is no possibility of increased taxes being passed on to it since the fee is held by a tax-exempt government agency." *Burton*, 365 U.S. at 724. The arrangement in this case similarly creates certain tax advantages for Killington, since the lift facilities are real estate and are also deemed to be the property of the State. *See Sherburne*, 124 Vt. at 486, 207 A.2d at 128 (lift facilities at Killington (then called Sherburne) are real estate owned by the State of Vermont,

---

[2] Available at http://auditor.vermont.gov/sites/auditor/files/files/reports/ski-leases/Final-SAO-Report-on-Ski-Resort-Leases.pdf.

and thus exempt from taxation). The court is not persuaded, however, that the tax advantage is sufficient to qualify the relationship as symbiotic.

This case is distinguishable from *Burton* in key respects. Whereas in *Burton* the upkeep and maintenance of the building was the responsibility of the governmental entity, the 1960 lease in this case specifies that the lessee is generally responsible for maintenance of all lifts, buildings, and structures. Perhaps most importantly, the *Burton* Court noted the "peculiar relationship" of the restaurant to the parking facility in which the restaurant was located: restaurant guests had a convenient place to park, and the convenient dining might drive additional demand for the parking facility. *Burton*, 365 U.S. at 724. There is no such symbiotic relationship in this case: nothing in Mr. Skoric's allegations or in the lease suggests that Killington is operated as an integral part of a public building or other public enterprise. For these reasons, the court concludes that the symbiotic-relationship test is not met, and that Mr. Skoric has failed to allege that Killington acted under color of state law.

## II. Leave to Amend

The Second Circuit has held that district courts should not dismiss the claim of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, leave to amend the complaint is not required where an amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). The court finds that leave to

5

amend would be futile in this case because the details of Killington's relationship with the State of Vermont are clear from the public record, and establish that the symbiotic-relationship test is not met.[3]

## Conclusion

Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 1) is GRANTED.

The case is DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii).

The court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

Dated at Rutland, in the District of Vermont, this 20 day of September, 2017.

Geoffrey W. Crawford, Judge
United States District Court

---

[3] The symbiotic-relationship test is not the only way in which a seemingly private action may be deemed state action for the purposes of § 1983. Mr. Skoric does not rely on any of the other possible avenues, and the court concludes that none of them are applicable. Killington is not performing a traditional state function. *Cf. Marsh v. Alabama*, 326 U.S. 501, 506–07 (1946). The state's link to the challenged action is insufficient to satisfy the close-nexus test. *Cf. Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). And Killington is not a "willful participant in joint activity with the State or its agents." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982).

6